PEOPLE v HILL

PEOPLE v MEDLEY

Docket Nos. 81818, 81819. Argued May 1, 1989 (Calendar No. 1). Decided September 27, 1989.

Rodney Hill and Derrick Medley were charged with possession of a short-barreled shotgun. At the time of their arrest, each defendant possessed one of two components of the shotgun. After preliminary examination, the 36th District Court, Isidore Torres, J., dismissed the charge against Medley. The Recorder's Court of the City of Detroit, Samuel C. Gardner, J., denied the people's application for leave to appeal, finding no abuse of discretion. Following Hill's preliminary examination, the 36th District Court, Ricardo Lubienski, J., ordered the defendant to stand trial. The Recorder's Court of the City of Detroit, Vera Massey Jones, J., granted the defendant's motion to quash the information, finding that the prosecution had failed to show that Hill possessed a shotgun, and dismissed the case. The cases were consolidated in the Court of Appeals. The Court, SHEPHERD, P.J., and HOOD and T. M. BURNS, JJ., affirmed in an unpublished opinion per curiam (Docket Nos. 92512, 93975). The people appeal.

In an opinion by Chief Justice RILEY, joined by Justices BRICKLEY, BOYLE, and GRIFFIN, the Supreme Court held:

Possession of a prohibited firearm is not limited to actual possession, but may include both constructive and joint possession by defendants acting in concert. The fact that a firearm is temporarily inoperable does not preclude prosecution for its possession where the statute expressly prohibits such possession.

1. If it appears that a felony has been committed for which there is probable cause to charge the defendant, it is the statutory duty of the magistrate to bind the defendant over for trial. Although the magistrate need not establish guilt beyond a reasonable doubt, there must be evidence of each element of the crime charged or evidence from which the elements may be

REFERENCES

Am Jur 2d, Weapons and Firearms §§ 16 et seq.

See the Index to Annotations under Weapons and Firearms.

inferred. It is not the function of the magistrate to discharge the accused when the evidence conflicts or raises a reasonable doubt as to guilt. Such questions are for the trier of fact.

2. Possession may be proven by circumstantial as well as direct evidence. The question of possession is one of fact. Both federal and Michigan courts recognize that possession may be actual or constructive. Constructive possession exists where a person knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person. Only constructive possession is necessary to establish the element of possession. Whether actual or constructive, possession may be joint as well as exclusive. With respect to a firearm, a person has constructive possession if the location of the weapon is known and is reasonably accessible.

3. Section 224b of the Michigan Penal Code, which prohibits the possession of short-barreled shotguns, must be given a reasonable interpretation in order to retain its intended legal effect, i.e., that of crime prevention. So construed, it is to be concluded that both unloaded and temporarily inoperable short-barreled shotguns fall within the purview of the statute. The statute was intended to prohibit constructive and joint possession of short-barreled shotguns. Where two different components of the same firearm are in the possession of two persons in proximity, and the two components comprise the essential parts of one proscribed firearm, a sufficient basis is provided for a factfinder to conclude that it is intended that each of the persons have sufficient control of the assembled firearm so as to amount to constructive and joint possession of the assembled firearm by each person. Thus, each may be charged with possession of one firearm.

Reversed.

Justice LEVIN, concurring generally, stated that because there was evidence from which the magistrates could find probable cause of a concert of action between the defendants to possess, or that they aided and abetted each other in possessing, an operable shotgun, he joins in the decision of the Court remanding the case for trial. He would, however, in *Medley,* have preferred to remand the case to the magistrate for reconsideration in light of the opinion of the Court rather than finding that there was an abuse of discretion in dismissing the charges.

Justice ARCHER, joined by Justice CAVANAGH, dissenting, stated that a defendant may not be prosecuted for possession of a short-barreled shotgun under MCL 750.224b; MSA 28.421(2)

if, upon apprehension of the defendant, the firearm in question is unassembled and the relevant parts are in possession of different persons, rendering the firearm inoperable.

CRIMINAL LAW — FIREARMS — JOINT POSSESSION.

Possession of a prohibited firearm is not limited to actual possession, but may include both constructive and joint possession by defendants acting in concert; the fact that a firearm is temporarily inoperable does not preclude prosecution for its possession where the statute expressly prohibits such possession (MCL 750.224b; MSA 28.421[2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Don W. Atkins,* Principal Attorney, Appeals, for the people.

*Michael A. Reynolds* for defendant Hill.

*Carole M. Stanyar* for defendant Medley.

RILEY, C.J. We granted leave to appeal in these cases to decide whether two defendants can be charged with possession of one short-barreled shotgun contrary to MCL 750.224b; MSA 28.421(2), when each defendant had in his possession one of the two component parts that comprised the short-barreled shotgun.

We find that possession of a prohibited firearm is not limited to actual possession, but may include both constructive possession, and joint possession by defendants acting in concert. Further, we find that the fact that a firearm is temporarily inoperable does not preclude prosecution for its possession where the statute expressly prohibits such possession. Therefore, we conclude that there is sufficient record support in the cases we decide today to support the charge of illegal possession of a short-barreled shotgun brought against each defendant.

Finally, we are persuaded that there are strong policy considerations that support our holding which discourages the practice of "breaking down" a shotgun to escape prosecution for illegal possession of weapons which our Legislature has clearly prohibited.

Accordingly, we hold that the Court of Appeals erred in affirming the dismissal of the charges. Thus, we reverse the decision of the Court of Appeals, reinstate the charges against the defendants, and remand the cases to the trial court for proceedings consistent with this opinion.

### I. FACTS AND PROCEEDINGS

On the evening of January 17, 1986, Detroit Police Officers Thomas Dogonski and Earl Cunningham were dispatched to the intersection of Ellis and Grandmont to investigate a report of a "large fight." They arrived two minutes after receiving the call and saw the two defendants standing together near the intersection of Ellis and Woodmont, approximately one block away. Unable to see anyone else in the area, the officers drove up to the defendants to inquire about the reported fight.

As the police drew even with the two men, Officer Dogonski noticed blood dripping from a fresh cut under defendant Medley's left eye. At this point, he also observed a large bulge under the left side of Medley's coat. Explaining that it was an iron pipe, Medley began to reach toward his coat. Dogonski instructed him not to move, held onto Medley, and pulled out the breech portion of a shotgun.[1] Also found in Medley's possession was one loaded 12-gauge shotgun shell.

After being alerted that Medley appeared to

---

[1] The breech of a shotgun is the handle and firing mechanism.

have a weapon, Officer Cunningham conducted a
"pat-down" search of defendant Hill. He discovered the barrel portion of a sawed-off, double-barreled shotgun stuffed in the front of Hill's pants.
Not only did the barrel portion "lock[ ] right up
together" with the breech, but both parts came
from the same manufacturer and had matching
serial numbers. The barrel was twelve inches long,
and the assembled gun totaled seventeen inches in
length. Consequently, the defendants were charged
with possession of a short-barreled shotgun pursuant to MCL 750.224b; MSA 28.421(2).

After Medley's preliminary examination, the
magistrate dismissed the charges. The plaintiff
filed an application for leave to appeal the dismissal of the charges against Medley in the Detroit Recorder's Court. This application was denied
on the ground that the examining magistrate did
not abuse her discretion in dismissing the case.
The plaintiff then filed an application for leave to
appeal in the Court of Appeals, which was granted
on January 6, 1987.

Conversely, Hill was ordered to stand trial. The
acting magistrate, Judge Lubienski, ruled that the
defendants were so close in time and place that
the "two pieces of gun could come together, [and]
become an active and very dangerous weapon."
Judge Lubienski also noted that this created a
"danger contemplated by the statute" and that
this danger is what the "Legislature wants to
prevent." Following the preliminary examination,
Hill filed a motion to quash in the Recorder's
Court. In granting the motion, the court found
that the prosecution failed to show that Hill was
in possession of a "shotgun," and the case was
dismissed. On May 9, 1986, the plaintiff appealed
the dismissal.

Upon the plaintiff's motion, the Court of Ap-

peals consolidated the two cases, and on September 11, 1987, it upheld the lower courts' dismissal of the cases against each defendant.[2] The plaintiff sought leave to appeal, which we granted on March 22, 1988.[3]

## II. ANALYSIS

If it appears that a felony has been committed for which there is probable cause to charge the defendant, it is the statutory duty of the magistrate to bind the defendant over for trial. MCL 766.13; MSA 28.931. Although the magistrate need not establish guilt beyond a reasonable doubt, there must exist evidence of each element of the crime charged or evidence from which the elements may be inferred. *People v Doss,* 406 Mich 90; 276 NW2d 9 (1979). It is not the function of the magistrate to discharge the accused when the evidence conflicts or raises a reasonable doubt as to guilt. Such questions are for the trier of fact. *People v Coons,* 158 Mich App 735; 405 NW2d 153 (1987), lv den 428 Mich 900 (1987). Thus, the issue we must now decide is whether the conduct of Hill and Medley, as shown by the evidence presented at their preliminary examinations, falls within the scope of the statute prohibiting the possession of a short-barreled shotgun.

### A

Possession may be proven by circumstantial as well as direct evidence. *United States v Smith,* 591 F2d 1105 (CA 5, 1979). The question of possession is factual and is to be answered by the jury. *United States v Holt,* 427 F2d 1114 (CA 8, 1970).

---

[2] Unpublished opinion per curiam of the Court of Appeals, decided September 11, 1987 (Docket Nos. 92512, 93975).

[3] 430 Mich 858 (1988).

A general discussion of "possession" is found in 72 CJS, Possession, p 233 (1951), which provides, "[the term possession] is interchangeably used to describe actual possession and constructive possession, which often so shade into one another that it is difficult to say where one ends and the other begins."

Federal courts consistently have recognized two types of possession, actual and constructive. *United States v Burch,* 313 F2d 628 (CA 6, 1963); *United States v LaGue,* 472 F2d 151 (CA 9, 1973). Although not in actual possession, a person has constructive possession if he "knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . ." *Burch, supra* at 629. Possession of a firearm need only be constructive to establish the element of possession. *United States v Martin,* 706 F2d 263 (CA 8, 1983); *Holt, supra.* Whether actual or constructive, possession may be joint as well as exclusive. *Holt, supra.* It has been held:

> "The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint." [*Smith, supra* at 1107, quoting *United States v Ransom,* 515 F2d 885, 890-891 (CA 5, 1975), cert den 424 US 944 (1976), reh den 425 US 945 (1976).]

Michigan courts also have recognized that the term "possession" includes both actual and constructive possession. As with the federal rule, a person has constructive possession if there is proximity to the article together with indicia of control. *People v Davis,* 101 Mich App 198; 300 NW2d 497 (1980). Put another way, a defendant has

constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant. Physical possession is not necessary as long as the defendant has constructive possession. *People v Terry,* 124 Mich App 656; 335 NW2d 116 (1983).

We find that the decisions of the Court of Appeals and the federal courts are well-reasoned interpretations of the intent of the respective Legislatures when they enacted the applicable statutes regulating the possession and use of firearms. Therefore, we agree with the theory of constructive firearm possession and recognize the theory of joint firearm possession if the evidence suggests two or more defendants acting in concert.

B

We must now decide if the two shotgun parts constitute the firearm prohibited by the short-barreled shotgun statute. Section 224b of the Michigan Penal Code prohibits the possession of short-barreled shotguns.[4] The term "short-barreled shot-

[4] MCL 750.224b; MSA 28.421(2) provides:

(1) A person shall not manufacture, sell, offer for sale, or possess a short-barreled shotgun or a short-barreled rifle.

(2) A person who violates this section is guilty of a felony punishable by imprisonment for not more than 5 years, or a fine of not more than $2,500.00, or both.

(3) The provisions of this section shall not apply to the sale, offering for sale or possession of a short-barreled rifle or a short-barreled shotgun which the secretary of the treasury of the United States of America, or his delegate, pursuant to USC title 26, section[s] 5801 through 5872, or USC title 18, sections 921 through 928, has found to be a curio, relic, antique, museum piece or collector's item not likely to be used as a weapon, but only if the person selling, offering for sale or possessing the firearm has also fully complied with the provisions of sections 2 and 9 of Act No. 372 of the Public Acts of 1927, as amended, being sections 28.422 and 28.429 of the Michigan Compiled Laws.

gun" is defined in § 222(e) of the Penal Code.[5] Because a "short-barreled shotgun" is described as a modified or altered "shotgun," we must look to the definition of "shotgun."[6] Noting that "shotgun" is described as a "firearm," we are lead to the statutory definition of "firearm."[7] The defendants contend that because each component part, individually without the other, is incapable of "propelling a dangerous projectile," neither defendant can be charged with possession of a short-barreled shotgun. We disagree.

In determining the purpose of the law prohibiting the possession of short-barreled shotguns, the

The provisions of section 20 of chapter 16 of Act No. 175 of the Public Acts of 1927, as added by Act No. 299 of the Public Acts of 1968, being section 776.20 of the Michigan Compiled Laws, are applicable to this subsection.

[5] MCL 750.222(e); MSA 28.419(e) provides:

"Short-barreled shotgun" means a shotgun having 1 or more barrels less than 18 inches in length or a weapon made from a shotgun, whether by alteration, modification, or otherwise, if the weapon as modified has an overall length of less than 26 inches.

[6] MCL 750.222(d); MSA 28.419(d) provides:

"Shotgun" means a firearm designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball·shot or a single projectile for each single function of the trigger.

[7] MCL 8.3t; MSA 2.212(20) provides:

The word "firearm," except as otherwise specifically defined in the statutes, shall be construed to include any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion, except any smooth bore rifle or handgun designed and manufactured exclusively for propelling BB's not exceeding .177 calibre by means of spring, gas or air.

statutory rule of construction provided for in the Penal Code should be applied. MCL 750.2; MSA 28.192 provides:

> The rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof. All provisions of this act shall be construed according to the fair import of their terms, to promote justice and *to effect the objects of the law.* [Emphasis added.]

We now look to 94 CJS, Weapons, § 2, pp 479-480, and § 6, p 489, which offer:

> Statutes making it unlawful to have or carry weapons are designed to suppress the act or practice of going armed and being ready for offense or defense in case of conflict with another, and to outlaw instruments ordinarily used for criminal and improper purposes. . . . The statutes should receive a reasonable construction in accord with the purpose of the legislature and in the light of the evil to be remedied, and they should be construed with the thought in mind that they are aimed at persons of criminal instincts and for the prevention of crime . . . .
>
> *       *       *
>
> A deadly weapon does not cease to be such by becoming temporarily inefficient, nor is its essential character changed by dismemberment if the parts, with reasonable preparation, may be easily assembled so as to be effective.

Michigan courts have followed the "reasonable construction" guideline in interpreting the legislative intent behind our statutes governing the use and possession of firearms in order to "effect the

object of the law."[8] In *People v Bailey,* 10 Mich
App 636; 160 NW2d 380 (1968), two defendants
were convicted of carrying a concealed weapon,
one sawed-off shotgun, when it was found in the
car in which they were driving. The Court said:

> The basic intent of the legislature as indicated
> in the concealed weapon statute was that weapons
> should not be carried where they might be used to
> take lives. Courts should look for reasonable
> rather than tortured interpretations of statutes, or
> exceptions thereto, so as to reflect the intent of the
> legislature. [*Id.* at 639-640. See also *People v Jimi-*
> *nez,* 27 Mich App 633; 183 NW2d 853 (1970), lv
> den 384 Mich 819 (1971) (when used in a statute,
> the term "dangerous weapons" should not be nar-
> rowly construed by the court).]

In interpreting the statute that prohibits the
possession of a firearm in the commission of a
felony, the Court of Appeals again followed the
"primary and fundamental rule of statutory con-
struction," which is to "ascertain and give effect to
the purpose and intention of the Legislature."
*People v Gibson,* 94 Mich App 172, 177; 288 NW2d
366 (1979), rev'd on other grounds 411 Mich 993
(1981).

> Intent must be inferred from the language used,
> but it is not the meaning of the particular words
> in the abstract only or their strictly grammatical
> construction alone that governs. The words are to
> be applied to the subject matter and to the general

[8] The words of a penal statute should be read in a sense that best
harmonizes with the overall context of the statute and the end sought
to be achieved. With criminal statutes, the end is the evil sought to be
corrected and the objects of the law sought to be effectuated. *People v
Hall,* 391 Mich 175, 190; 215 NW2d 166 (1974). See also *People v
Goolsby,* 284 Mich 375, 379; 279 NW 867 (1938) (construction or
interpretation of a penal statute requires consideration of the evil
sought to be penalized).

scope of the provision, and they are to be considered in light of the general purpose sought to be accomplished or the evil sought to be remedied. [*Id.*, citing *White v Ann Arbor*, 406 Mich 554, 562; 281 NW2d 283 (1979).]

Applying this reasoning, courts have held that it is unnecessary to prove the operability of a weapon as an element of a prosecution of possession of a firearm during the commission of a felony because this would be " 'inconsistent with the legislative intent of discouraging the practice of carrying guns in circumstances where harm is apt to occur.' " *People v Jackson*, 108 Mich App 346, 350; 310 NW2d 238 (1981), citing with approval *Gibson, supra.*[9]

The concealed weapon statute and the felony-firearm statute necessitate the same statutory construction. Both laws refer to firearms carried by a person. "It is clear that the Legislature intended that a broad construction be given both laws." *People v Stephenson*, 94 Mich App 300, 302; 288 NW2d 364 (1979). Consequently, the Court found that the felony-firearm statute prohibited firearms which are inoperable because they are unloaded, as well as firearms which are not operable for mechanical reasons. *Stephenson, supra.*[10] See also *People v Sanchez*, 98 Mich App 562; 296 NW2d

[9] Other panels holding that the operability of a firearm is not necessary for the prosecution of a felony-firearm charge include: *People v Garrett*, 161 Mich App 649; 411 NW2d 812 (1987), lv den 430 Mich 856 (1988); *People v Poindexter*, 138 Mich App 322; 361 NW2d 346 (1984); *People v Brooks*, 135 Mich App 193; 353 NW2d 118 (1984); *People v Broach*, 126 Mich App 711; 337 NW2d 642 (1983).

[10] This follows the longstanding rule that a gun need not be loaded to violate the statute which prohibits the carrying of concealed weapons. *People v Williamson*, 200 Mich 342, 349-350; 116 NW 917 (1918).

See note, *The inoperable gun as a dangerous weapon under Michigan's felonious assault statute:* People v Stevens, 1981 Det C L R 909, 921:

312 (1980) (the distinction between unloaded and inoperable firearms is meaningless).

Even though a temporarily inoperable weapon is incapable of "propelling a dangerous projectile," the courts have followed *Stephenson* to sustain convictions for the illegal possession of firearms. In *People v Boswell,* 95 Mich App 405, 408-409; 291 NW2d 57 (1980), the argument that because the gun was "jammed," thus temporarily inoperable, it did not meet the statutory definition of a "firearm," was rejected. The Court held that the firearm statute, MCL 8.3t; MSA 2.212(20),

> demonstrates a legislative intent to distinguish the firearm from other potentially dangerous weapons by describing its general construction and manner of use. . . . Furthermore, this Court found the operability of a gun to be irrelevant for a conviction . . . a contrary result would thwart the deterrent purpose of the felony-firearm statute. [*Boswell, supra* at 409. See also *People v Brooks,* 135 Mich App 193; 353 NW2d 118 (1984) ("firearm" includes a weapon from which a dangerous projectile may be propelled even though the weapon may be in a state of temporary disrepair and, therefore, be incapable of firing).]

Finally, the Michigan Criminal Jury Instructions recognize that a gun must be, "totally inoperable as a firearm and *cannot be readily repaired"* before this can be raised as a defense to a charge of illegal firearm possession. CJI 11:1:09[11] (emphasis added).

---

The term "firearm" is written into the statutory definition of pistol. The court's announcement under the concealed weapon statute that both inoperable and unloaded guns are pistols implies that they are also firearms, even though they lack ability to propel a projectile.

[11] The text of CJI 11:1:09 reads:

A gun [revolver/pistol] which is so [out of repair/disassem-

A short-barreled shotgun is "obviously a man-killing weapon." *Bailey, supra* at 640. It is readily apparent that the legislative intent of the statute prohibiting its possession is consistent with that of the concealed weapon and felony-firearm statutes, to discourage the practice of carrying short-barreled shotguns.[12] Therefore, we agree with the holdings of the Court of Appeals and recognize that a reasonable interpretation best effects the objects of the laws regulating the use and possession of firearms, including the statute prohibiting the possession of short-barreled shotguns. Thus, temporarily inoperable firearms which can be made operable within a reasonable time fall within the purview of the statutes that govern the use and possession of firearms.[13]

C

In the instant cases, the Court of Appeals was not persuaded by the argument that because the defendants were in proximity to each other at the time of arrest, and the two components constituted one short-barreled shotgun, they were in possession of the shotgun.[14] We disagree.

---

bled with parts missing/welded together/plugged with lead] that it is totally inoperable as a firearm and cannot be readily repaired is not included within the statute under which the defendant is charged.

[12] As defendant Medley points out in his brief, one concern addressed by the Legislature when it enacted the short-barreled shotgun statute is the extreme danger inherent in discharging the gun because of the "wide pattern of bullet distribution . . . ." However, defendant Medley also concedes that the legislative history also suggests "concern that the sawed-off shotgun is easily concealable."

[13] In part II(B), we cite the Court of Appeals cases for the purpose of observing how the Court has interpreted the statutory definition of "firearm." We do not purport to interpret the concealed weapon statute or the felony-firearm statute.

[14] The Court based its decision on *In re Vaughn,* 160 Mich App 236,

During the preliminary examinations, it was demonstrated that both components of the short-barreled shotgun were marked with the identical serial number. Also, the evidence indicated that the two defendants were the only people in the vicinity of the reported fight and that they appeared to be together. Further, at defendant Medley's preliminary examination, Officer Dogonski testified that the two components could be attached in "[a]bout two seconds." Noting that Medley was carrying a loaded 12-gauge shotgun shell, it is evident that within seconds the defendants were capable of discharging a short-barreled shotgun. It would be naïve to believe that this is not within the "evil sought to be remedied" by the Legislature when it enacted the short-barreled shotgun statute.

While the dissent would have us believe that its interpretation of the short-barreled shotgun statute best evidences the intent of the Legislature, the consequence of its position is the elimination of the legal effect of the statute prohibiting the possession of short-barreled shotguns. Certainly, the Legislature could not have intended to pass a statute, one which expressly limits the possession of an "obviously man-killing device," whose legal effect is limited only to the narrowest of circumstances.

For instance, two individuals could be walking along a street, each brandishing one of two component parts of a short-barreled shotgun within inches of each other. Even though these two parts could be assembled within seconds to create a deadly weapon, the dissent would maintain that

238; 408 NW2d 85 (1987), lv den 428 Mich 922 (1987), where it was held that three defendants could not be charged with possession of one shotgun when "each possessed different parts of a disassembled shotgun which, without the other parts, were incapable of firing a dangerous projectile."

no crime has been committed notwithstanding the fact that all the elements of a weapons possession crime are present—the intentional possession of the prohibited gun with the knowledge of its character as a weapon. See CJI 11:8:01. The effect becomes evident, unless the theoretical one-inch gap between the two parts is eliminated and the gun is assembled, the statute is meaningless. Clearly, this could not have been the result contemplated when the Legislature enacted the short-barreled shotgun statute.

Accordingly, we find that MCL 750.224(b); MSA 28.421(2) was intended to prohibit the constructive and joint possession of short-barreled shotguns. In light of our decision, we hold that the evidence produced during the preliminary examinations necessitates that the defendants be bound over for trial as charged. As such, we find that it was an abuse of discretion to dismiss the charge against defendant Medley. Conversely, we find no abuse of discretion in binding defendant Hill over for trial.

### III. CONCLUSION

The policy behind statutes that prohibit the possession of specific firearms is that of crime prevention. The Legislature has recognized the extreme danger presented by short-barreled shotguns and has expressly outlawed their possession.[15] To apply an overly narrow construction to the statute would undermine this policy by allowing the criminal element to "break down" a firearm and move about freely within society without the threat of criminal prosecution. The law prohibiting the possession of short-barreled shotguns must be given a reasonable interpretation in order to retain its legal effect. Thus, the presence of two

---

[15] For the enumerated statutory exceptions to this law, see n 4.

different components of the same firearm in the
possession of two persons in proximity, when the
two components comprise the essential parts of
one proscribed firearm, provides a sufficient basis
for a factfinder to conclude that it is intended that
each of the persons have sufficient control of the
assembled firearm to amount to constructive and
joint possession of the assembled firearm in each
person.

We conclude that two defendants may be
charged with possession of one short-barreled shot-
gun when each defendant has in his possession one
of two components that comprise the weapon.

Accordingly, we reverse the decision of the
Court of Appeals and order the parties to proceed
to trial.

BRICKLEY, BOYLE, and GRIFFIN, JJ., concurred
with RILEY, C.J.

LEVIN, J. (*separate opinion*). I join in the deci-
sion of the Court remanding the causes for trial
because I agree that there was evidence from
which the magistrates could find probable cause of
a concert of action[1] between Hill and Medley to
possess, or that Hill and Medley aided and abetted
each other in possessing, an operable shotgun.[2] I
agree that "temporarily inoperable firearms which
can be made operable within a reasonable time
fall within the purview of the statutes that govern
the use and possession of firearms."[3]

I write separately because I am unable to join in
some of the other statements in the opinion of the

---

[1] [I]f the evidence suggests two or more defendants acting in
concert. [*Ante,* p 471.]

[2] MCL 750.224b; MSA 28.421(2).

[3] *Ante,* p 477.

Court. I do not agree that a defendant "has con-
structive possession of a firearm if the location of
the weapon is known and it is reasonably accessi-
ble to the defendant"[4] or that "two defendants
may be charged with possession of one short-bar-
reled shotgun when each defendant has in his
possession one of two components that comprise
the weapon"[5] absent evidence of a concert of ac-
tion to possess, or that they aided and abetted
each other in possessing, the shotgun.

Nor do I agree that "[t]he concealed weapon
statute and the felony-firearm statute necessitate
the same statutory construction"[6] even though
"[b]oth laws refer to firearms carried by a per-
son."[7]

Also, it is one thing to hold, as did this Court in
*People v Williamson,* 200 Mich 342; 116 NW 917
(1918), that the people need not show that a con-
cealed weapon is loaded, and quite another to hold

[4] *Id.,* pp 470-471.

[5] *Id.,* p 480.

[6] This Court, in a prosecution for armed robbery, said:

We think it clear from that history that when enacted the
words "dangerous weapon," etc., contemplated that the defen-
dant would actually have a dangerous weapon; this is implicit
in the phrase "with intent, if resisted, to kill or maim." The
elimination of the "with intent" requirement reduced the pros-
ecutor's burden of proof, but does not provide a basis for
construing the section as no longer requiring that the defen-
dant actually have a dangerous weapon or an article used or
fashioned in a manner to lead the persons so assaulted to
reasonably believe it to be a dangerous weapon.

It is not enough that the person assaulted is put in fear; a
person who is subjected to an unarmed robbery may be put in
fear.

To constitute armed robbery the robber must be armed with
an article which is in fact a dangerous weapon—a gun, knife,
bludgeon, etc., or some article harmless in itself, but used or
fashioned in a manner to induce the reasonable belief that the
article is a dangerous weapon. [*People v Parker,* 417 Mich 556,
564-565; 339 NW2d 455 (1983).]

[7] *Ante,* p 475.

that they need not show that it is operable. An unloaded gun, it appears, can be loaded in a few seconds. An inoperable gun might also, as appears in the instant case, be made operable within a few seconds. Where, however, there is a mechanical problem, it may take considerable time, days or weeks, to make the gun operable. If so, it is not a weapon or a "dangerous weapon."[8]

No decision of this Court supports the view that a distinction between "unloaded and inoperable firearms is meaningless."[9] That expression is taken from the four-paragraph per curiam opinion in *People v Sanchez,* 98 Mich App 562, 564; 296 NW2d 312 (1980), where, although the parties had stipulated that the weapon was not operable, the defendant's conviction of carrying a concealed weapon[10] was affirmed without any apparent consideration of the cogent and carefully reasoned dissenting opinion where the decisions of this Court were discussed and considered.[11]

I would prefer to remand in *Medley* to the magistrate for reconsideration in light of the opinion of the Court rather than to find that there was

---

[8] MCL 750.227; MSA 28.424.

[9] *Ante,* p 476.

[10] See n 7.

[11] The opinion of the Court refers to Michigan Criminal Jury Instructions (CJI 11:1:09), providing that a gun that is "totally inoperable as a firearm and cannot be readily repaired" may not be the basis of a charge of carrying a concealed weapon.

I also note that the opinion of the Court states that in citing decisions of the Court of Appeals this Court "do[es] not purport to interpret the concealed weapon statute or the felony-firearm statute." *Ante,* p 477, n 13.

There is a significant difference between simply carrying or possessing a weapon, which a law-abiding, or otherwise law-abiding, person might do, and carrying, possessing, or brandishing a weapon during the course of the commission of a criminal offense. That difference may properly be considered in deciding the correct construction and operative effect of the diverse statutes proscribing, with various other qualifications and limitations, the carrying, possessing, or using of weapons.

an "abuse of discretion"[12] in dismissing the charges against Medley. The circuit court (Recorder's Court), the Court of Appeals, and this Court review a magistrate's decision for abuse of discretion.[13] It is unclear whether the magistrate in *Medley* in fact exercised his discretion, as distinguished from ruling as a matter of law. Depending on the context, Medley might be entitled to an opportunity to offer evidence controverting the people's proofs[14] before the magistrate exercises his discretion.

ARCHER, J. (*dissenting*). We granted leave to appeal in these cases to decide whether, contrary to MCL 750.224b; MSA 28.421(2),[1] two defendants can be charged with possession of one short-barreled shotgun when each defendant had in his possession, one of two component parts of the short-barreled shotgun. The majority holds that possession of a prohibited firearm is not limited to actual possession, but may include both construc-

[12] *Ante,* p 479.

[13] See *People v Talley,* 410 Mich 378, 386; 301 NW2d 809 (1981).

[14] See MCL 766.12; MSA 28.930; *People v King,* 412 Mich 145, 153; 312 NW2d 629 (1981); *People v Talley, supra,* p 386.

[1]   (1) A person shall not manufacture, sell, offer for sale, or possess a short-barreled shotgun or a short-barreled rifle.

(2) A person who violates this section is guilty of a felony punishable by imprisonment for not more than 5 years, or a fine of not more than $2,500.00, or both.

(3) The provisions of this section shall not apply to the sale, offering for sale or possession of a short-barreled rifle or a short-barreled shotgun which the secretary of the treasury of the United States of America, or his delegate, pursuant to USC title 26, section[s] 5801 through 5872, or USC title 18, sections 921 through 928, has found to be a curio, relic, antique, museum piece or collector's item not likely to be used as a weapon, but only if the person selling, offering for sale or possessing the firearm has also fully complied with the provisions of sections 2 and 9 of Act No. 372 of the Public Acts of 1927, as amended, being sections 28.422 and 28.429 of the Michigan Compiled Laws.

tive and joint possession by defendants acting in concert. The majority further holds that the fact that a firearm was temporarily inoperable does not preclude prosecution for its possession since the statute expressly prohibits such possession.

Although the reasoning set forth in the majority opinion is based on sound legal principles, the present state of the law as set forth in MCL 750.224b; MSA 28.421(2) and MCL 750.222(d); MSA 28.419(d), requires that I disagree. Accordingly, I would hold that under MCL 750.224b; MSA 28.421(2) the defendants may not be prosecuted for possession of a short-barreled shotgun if, upon apprehension of the defendants, the firearm in question is unassembled with the relevant parts in possession of different persons, rendering the firearm inoperable.

I

The principal statute examined today criminalizes the manufacture, sale, and possession of short-barreled shotguns and rifles. MCL 750.224b; MSA 28.421(2). Defendant Hill was charged with possession of a shotgun under circumstances which revealed that the gun in question was unassembled and, thus, inoperable when he and his codefendant Medley were apprehended.[2]

In 1978, the Legislature amended MCL 750.222(d); MSA 28.419(d) to include, inter alia, the definition of a shotgun. Hence,

> "[s]hotgun" means a firearm designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and

[2] As indicated on page 468 of the lead opinion, the charges against defendant Medley were dismissed.

made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single function of the trigger.

Despite the policy arguments which weave the phrases "evil sought to be remedied," "broad construction" and "legislative intent" throughout the majority opinion, essentially, the majority has rewritten the statute, adding a clause which provides that possession of unassembled firearms also may give rise to criminal prosecution. By taking this step, the majority contravenes the well-settled rule that "penal statutes should be strictly construed against the government or parties seeking to enforce statutory penalties and in favor of the persons on whom penalties are sought to be imposed." 3 Sands, Sutherland Statutory Construction (4th ed), § 59.03, p 11.

Federal courts, in 26 USC 5845(d), have been specifically provided with an avenue through which prosecution may take place when dealing with facts similar to those at bar:

The term "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, *and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.* [Emphasis added.]

Irrespective of the statute's character as an excise tax provision, federal courts utilize this definition to uphold convictions of defendants for

possession of unassembled shotguns.³ See *United States v Woods,* 560 F2d 660, 664-665 (CA 5, 1977) (the fact that a weapon when found was in two pieces was immaterial to the conviction for possessing an unregistered sawed-off shotgun, where only a minimum of effort was required to make it operable).

Additionally, in terms of other states' statutes, the California Legislature defines the term "short-barreled shotgun" as follows:

> As used in this section, a "short-barreled shotgun" means any of the following:
>
> A firearm which is designed or redesigned to fire a fixed shotgun shell and having a barrel or barrels of less than 18 inches in length.
>
> A firearm which has an overall length of less than 26 inches and which is designed or redesigned to fire a fixed shotgun shell.
>
> Any weapon made from a shotgun (whether by alteration, modification, or otherwise) if that weapon, as modified, has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length.
>
> *Any device which may be readily restored to fire a fixed shotgun shell which, when so restored, is a device defined in subparagraphs (A) to (C), inclusive.* [California Penal Code, § 12020(c)(1)(A)-(D). Emphasis added.]

³ But see 18 USC 921 of the National Firearms Act which provides:

(5) The term "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

(6) The term "short-barreled shotgun" means a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than twenty-six inches.

Michigan plainly has no comparable statutory clause or provision within its legislation on this subject. Furthermore, expressly included within the title paragraph of then HB 4972 is the phrase, "to define crimes," which, in my view, is an unambiguous declaration by the Legislature that what was then written was what was intended to be applied. I cannot presume that our Legislature intended to adopt the additional clause. I, therefore, believe it imprudent for our Court to read or write added language into the Michigan statute. "For us to supply the fatally missing words would not be permissible judicial construction but judicial legislation of the boldest kind. However desirable the change might be . . . it is still one for the legislature to make by using appropriate language where it is needed. It lies without our province to do so for it." *Ross v Fisher,* 352 Mich 555, 559-560; 90 NW2d 483 (1958).

II

The majority's frequent citation of Court of Appeals decisions supporting its position overshadows the singular reference to *In re Vaughn,* 160 Mich App 236; 408 NW2d 85 (1987), lv den 428 Mich 922 (1987), in n 14. Unlike the decisions cited, the Court in *In re Vaughn* held that individuals who each possess parts of one completely disassembled short-barreled shotgun may not be convicted of the offense of possession of a short-barreled shotgun where the separate parts by themselves are incapable of being fired. *Id.* at 238-239.

Although this Court is not specifically bound by this analysis, I think the majority is remiss in failing either to completely discuss the view presented in *In re Vaughn,* or to at least acknowledge the split. Thus, as the decision in *Vaughn* is

consistent with the well-settled rule that penal statutes are to be narrowly construed, it is my view that until the Legislature speaks otherwise, *In re Vaughn* represents the appropriate analysis and resolution of this issue.

III

Finally, the majority presents an interesting but incomplete discussion and application of the "constructive possession" theory. *People v Davis,* 101 Mich App 198, 202; 300 NW2d 497 (1980), is cited for the proposition that "[o]ne has constructive possession if one has proximity to the article together with an indicia of control." Following this citation, the majority first restates the elements of constructive possession, by summarizing, "a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant,"[4] *ante,* pp 470-471, and then completely neglects to apply the stated elements to the facts at bar.

I agree with *Davis* that constructive possession requires proximity as well as some objective indicia of control. Unfortunately, when applying these elements to our facts, the latter factor is missing. Although the defendants indeed had proximity to one another, there is no proof either through the testimony of the officers or from an objective review of the facts, that either defendant exercised control over the other or over that which was in each of their possessions namely, the pieces of the shotgun. Thus, it is my opinion that the constructive possession theory, though valid when applicable, cannot resolve the issues presented here.

---

[4] The majority cites *People v Terry,* 124 Mich App 656; 335 NW2d 116 (1983), which, though dealing with a firearm, did not address the situation presented at bar, i.e., unassembled firearms.

CONCLUSION

Until such time as the Legislature amends the statutes at issue today, a defendant may not be prosecuted for possession of a short-barreled shotgun under MCL 750.224b; MSA 28.421(2) if, upon apprehension of the defendant, the firearm in question is unassembled with the relevant parts in possession of different persons, rendering the firearm inoperable. I would affirm the decision of the Court of Appeals and dismiss the charges against the defendants.

CAVANAGH, J., concurred with ARCHER, J.